**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **JAMES HALAMEK, et al.,** <br> **Plaintiffs,** <br> **v.** <br> **PHILIPS NORTH AMERICA LLC, et al.,** <br> **Defendants.** | ) | **Civil Action No. 25-12003-FDS** |

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTION TO DISMISS**

**SAYLOR, J.**

This dispute arises out of alleged violations of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1001 et seq ("ERISA"). Jurisdiction is based on 28 U.S.C. § 1331 and 29 U.S.C. § 1001. Defendant Philips North America LLC administers a defined contribution retirement plan. Defendant ERISA Investment Committee of Philips North America LLC monitors the plan. Plaintiffs James Halamek, Karl Tysl, and Kathy Woods participated in the plan. During the period at issue, plan investments included the Prudential Stable Value Fund, which guaranteed a certain rate of return. In addition, forfeited funds from the plan were used to reduce Philips's contributions to the plan rather than to pay plan expenses.

The lawsuit is brought as a class action against both Philips and the Committee. First, the complaint alleges that the Committee breached its fiduciary duty of prudence by investing in Prudential SVF despite its poor performance compared to other investments. Second, it alleges that Philips breached its fiduciary monitoring duties by failing to monitor the performance of the Committee. Finally, it alleges that Philips breached its fiduciary duty of loyalty by utilizing

forfeited funds in the plan for the benefit of the company rather than the plan participants.

For the following reasons, the motion to dismiss will be denied.

## I. Factual Background

The following facts are set forth as alleged in the complaint.

Philips North America LLC administers a defined contribution retirement plan that enables participants to make tax-deferred contributions from their salaries. (Am. Compl., Dkt. No. 21 ¶ 2). The ERISA Investment Committee of Philips North America LLC was appointed by Philips to ensure that the plan included investments that were appropriate, had no more expenses than reasonable, performed well compared to their peers, and paid a fair price for recordkeeping administrative costs. (*Id.* ¶ 31).

James Halamek, Karl Tysl, and Kathy Woods participated in the plan. (*Id.* ¶ 23-25). By 2023, the plan had more than $5.7 billion in assets under management. (*Id.* ¶ 10-11).

### A. Prudential SVF

Participants in the plan were permitted to select investments in different funds. Among the available funds was the Prudential Stable Value Fund, a guaranteed income fund. (*Id.* ¶ 45). By 2023, more than $420 million in plan assets were invested in the Prudential SVF. (*Id.* ¶ 47). Halamek, Tysl, and Woods invested in the Prudential SVF. (*Id.* ¶ 23-25).

For defined contribution plans, stable value investments are intended to provide participants with an option that protects their assets, which is why they are called Guaranteed Investment Contracts ("GICs"). (*Id.* ¶ 72). GICs guarantee a rate of return or "crediting rate" during a specified period. (*Id.* ¶ 73).

Because a GIC product is backed by an insurer, administrators must focus on the creditworthiness of the insurer. (*Id.* ¶ 79). According to the complaint, Prudential, the relevant insurer, is at substantial risk of becoming insolvent. (*Id.* ¶ 79-99). That risk of insolvency puts

Prudential SVF's crediting rate at risk. (*Id.* ¶ 98).

According to the complaint, although referred to as a synthetic GIC, Prudential SVF operates as a traditional GIC. (*Id.* ¶ 75). Therefore, Prudential SVF's crediting rates can be compared to traditional GICs. (*Id.* ¶ 77). The complaint alleges that during the relevant period, identical or substantially identical GICs with higher crediting rates were available. (*Id.* ¶ 101).[1] Those GICs outperformed Prudential SVF by an average of more than 40%. (*Id.* ¶ 104). However, none of those alternative GICs were selected by Philips or the Committee and made available to participants. (*Id.* ¶ 101). By selecting Prudential SVF, the plan allegedly suffered millions of dollars of losses due to excessive costs and lower net investment returns. (*Id.* ¶ 128).

**B. <u>Forfeitures</u>**

Eligible Philips employees may elect to make contributions to their plan accounts. (*Id.* ¶ 50). Employees are 100% vested in their contributions. (*Id.* ¶ 55). Company contributions become 50% vested after one year and 100% vested after two years or when the employee reaches age 65, retires, dies, or becomes disabled. (*Id.*). A plan participant's non-vested portion when their employment terminates becomes a forfeiture. (*Id.* ¶ 56).

Under the plan, "[forfeiture] accounts can be used to reduce future Company contributions or pay administrative expenses of the [p]lan." (*Id.* ¶ 57). Using the forfeitures to reduce Philips's contributions is in the best interest of the company because it decreases its own contribution costs. (*Id.* ¶ 115). Using forfeitures to pay plan expenses would be in the best

[1] Plaintiffs identify Pomona Valley Hospital Medical Center Retirement Savings Plan, Gemba Group Annuity Plan, Holzer Health System 401(a) Profit Sharing Plan, Jackson National Life Insurance Company Defined Contribution Plan, Transamerica 401(k) Retirement Savings Plan, Valley Children's Hospital Defined Contribution Retirement Plan, HCC Insurance Holdings Inc. 401(k) Plan, American United Life Progress Sharing Plan and Trust, Auto-Owners Insurance Company Retirement Savings Plan, International Imaging Materials Inc. Retirement Investment Plan, Mattel, Inc. Personal Investment Plan, and the Trugreen Profit Sharing and Retirement Plan as comparable GICs.

interest of the participants, because it reduces costs charged to their account. (*Id.* ¶ 116).

According to the complaint, in all instances, defendants chose to use forfeitures to reduce the company's contributions. (*Id.* ¶ 122). The complaint alleges that defendants never investigated whether that option was in the best interest of the participants. (*Id.* ¶ 118). It also alleges that defendants did not consult with an independent decision-maker to advise them on that course of action. (*Id.* ¶ 120).

## II. Procedural Background

Plaintiffs filed this action on July 15, 2025, and filed an amended complaint on November 24, 2025. Defendants have moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted.

## III. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), the complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must "take the complaint's well-pleaded facts as true, and . . . draw all reasonable inferences in the plaintiff's favor." *Lowe v. Mills*, 68 F.4th 706, 713 (1st Cir. 2023) (quoting *Frese v. Formella*, 53 F.4th 1, 5 (1st Cir. 2022)) (citation modified). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir.

2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## IV. Analysis

### A. Count 1

The complaint alleges that the Committee breached its fiduciary duty of prudence by investing in Prudential SVF despite its poor performance compared to other similar investments. Any person who exercises discretionary authority in the management of an ERISA plan is a fiduciary. 29 U.S.C. § 1002(21)(A). A fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B).

"The content of the duty of prudence turns on the circumstances . . . prevailing at the time the fiduciary acts." *Barchock v. CVS Health Corp.*, 886 F.3d 43, 44 (1st Cir. 2018) (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)). The test is "one of *conduct*, and not a test of the result of performance of the investment." *Id.* (citing *Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 7 (1st Cir. 2009). Therefore, "whether a fiduciary's actions are prudent cannot be measured in hindsight." *Id.* (citation modified).

The complaint alleges that Prudential SVF performed substantially poorly compared to other comparable GICs. Under ERISA, a fiduciary is required to "conduct a regular review of its investment with the nature and timing of the review contingent on the circumstances." *Tibble v. Edison Int'l*, 575 U.S. 523, 528 (2015). The crediting rate of Prudential SVF can be reset on a semi-annual basis. Plaintiffs contend that the Committee acted imprudently because it failed to improve the crediting rate of Prudential SVF by either (1) submitting requests for proposals to Prudential and other providers of stable value investments or (2) negotiating higher crediting

rates from Prudential.

Defendants contend that First Circuit precedent—specifically, *Ellis v. Fid. Mgmt. Tr. Co*, 883 F.3d 1 (1st Cir. 2018), and *Barchok v. CVS Health Corp.*, 886 F.3d 43 (1st Cir. 2018), forecloses plaintiffs' claim. The Court disagrees. Upon review of a motion for summary judgment, the *Ellis* court assessed plaintiff's claims that Fidelity was imprudent when it used a certain benchmark and failed to take corrective action on a poorly performing fund. *Ellis*, 883 F.3d at 10-11. And upon review of a motion to dismiss, the *Barchok* court analyzed plaintiff's complaint that CVS had breached its duty of prudence by investing too much of the fund's assets in cash-equivalents rather than intermediate-term investments that generally provided higher returns. *Barchok*, 886 F.3d at 49-50. As defendants correctly note, in both cases, the First Circuit held that a fiduciary's investments could not be imprudent by virtue of being "too conservative." *Ellis*, 883 F.3d at 9-11; *Barchok*, 886 F.3d at 49-50. However, the *Ellis* court noted that plaintiff's corrective action claim failed only because he "[had] not identified *any particular act or omission* . . . that was imprudent." *Ellis*, 883 F.3d at 11 (emphasis added). Here, the complaint specifically alleges two courses of action the Committee should have taken to improve Prudential SVF's crediting rate.[2] Taking the facts as true and drawing all reasonable inferences in plaintiff's favor, those allegations are sufficient to state a claim.

Defendants also contend that plaintiff has not put forth meaningful comparator SVFs nor has shown that the Prudential SVF consistently and substantially underperformed them. That dispute involves a question of fact that the Court cannot resolve at this stage. Accordingly, the motion to dismiss Count 1 will be denied.

[2] Defendants contend that the crediting rate was set by formula and therefore could not be negotiated. Whether the Committee could have ceased use of the Prudential SVF after a semi-annual review or transitioned to use of another SVF is a question of fact not appropriate for resolution on this motion.

**B. <u>Count 2</u>**

The complaint further alleges that Philips breached its fiduciary monitoring duties by failing to monitor and evaluate the performance of the Committee. That claim is derivative of Count 1. *See, e.g.*, *Tracey v. Mass. Inst. of Tech.*, 2017 WL 4478239, at *4 (D. Mass. Oct. 4, 2017). Therefore, the motion to dismiss Count 2 will be denied.

**C. <u>Count 3</u>**

Count 3 alleges that Philips breached its fiduciary duty of loyalty by using forfeited funds to reduce company contributions to the fund rather than pay plan expenses. Plaintiffs contend that the decision of how to use forfeited funds posed a conflict of interest, and that Philips acted disloyally by failing to investigate which option was in the best interest of plan participants.

ERISA requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). The majority of courts have concluded that (1) when a plan document gives a fiduciary discretion in how to use forfeitures and (2) participants have otherwise received everything guaranteed by the plan's terms, fiduciaries do not violate their duty of loyalty by declining to use forfeitures to reduce administrative expenses. *See, e.g.*, *Polanco v. WPP Grp. USA, Inc.*, 2025 WL 3003060, at *4 (S.D.N.Y. Oct. 27, 2025); *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 923-26 (N.D. Cal. 2025); *Barragan v. Honeywell Int'l Inc.*, 2025 WL 2383652, at *4-5 (D.N.J. Aug. 18, 2025); *Armenta v. WillScot Mobile Mini Holdings Corp.*, 2025 WL 2645518, at *5-6 (D. Ariz. Sept. 15, 2025). Those courts have reasoned that "ERISA does not create an exclusive duty to maximize pecuniary benefits," *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004), and ERISA "does no more than protect the benefits which are due to an employee under a plan." *Id.* (citing *Bennett v.*

*Conrail Matched Sav. Plan Admin. Comm.*, 168 F.3d 671, 677 (3d Cir. 1999)).

In this context, at least, there may be reasons to decide this case differently. The plan at issue is a defined contribution plan, not a defined benefit plan. The benefits that are due to the participants are thus not fixed. Presumably, those benefits will vary to a substantial extent depending on investment decisions and market results. But the benefits paid could also vary, at least to some extent, on the level of expenses incurred by the plan—if those expenses are deducted from, or otherwise reduce, participant account balances. If discretionary decisions to reduce expenses are *always* exercised in favor of the employer, and *never* in favor of the participants, and *if* that reduces participant benefits, that conceivably could constitute a breach of the fiduciary duty of loyalty. Put another way, even if the plan confers broad discretionary powers, it is at least plausible that defendants were motivated purely by self-interest and acted in a manner that was detrimental to participants. *See McManus v. Clorox Co.*, 2025 WL 732087, at *2-4 (N.D. Cal. Mar. 3, 2025) (allowing plaintiff's forfeiture claim to proceed, as their argument that "defendants were motivated solely by self-interest and conducted no reasoned and impartial decision-making process [was] plausible given that no other justification is readily apparent."). Because the Court does not have a sufficient factual record to resolve that issue, the motion will be denied pending, at a minimum, the development of such a record.

Accordingly, defendants' motion to dismiss Count 3 will be denied.

## V. Conclusion

For the foregoing reasons, the motion of defendants to dismiss for failure to state a claim upon which relief can be granted is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: September 4, 2026